### AFFILIATED ENTERPRISES, Inc., v. COURTER AMUSEMENT CO., Inc., et al.

### No. L–7577.

District Court, E. D. New York.

March 15, 1940.

John M. Keating, of New York City, for plaintiff.

Townsend, Kindleberger & Campbell, of New York City, for defendants.

BYERS, District Judge.

The plaintiff moves for an order striking the answer as sham and for summary judgment.

On behalf of the motion, there are submitted an amended complaint (the date of verification of which is not disclosed) which demands judgment in the sum of $1,527.50 with interest from January 6, 1937, and the answer. Upon those pleadings, the court inquired of the plaintiff concerning its theory of the court's juris-

diction, since less than $3,000 seemed to be involved.

In response, a memorandum was received on March 13, 1940, in which it is recited that the action was originally commenced in the Supreme Court, County of Kings, State of New York, and that "the relief demanded was judgment in the sum of $1,245, with interest from the respective due dates, together with the sum of $200 per day for each and every day that the acts complained of had occurred"; that the cause was removed to this court in January of 1938, pursuant to a petition which alleged that the complaint demanded damages in excess of the sum of $14,045, exclusive of interest and costs, and that the petition was granted.

That the amended complaint above referred to was thereafter served, in which judgment was sought as stated.

■ Under these circumstances, it must be deemed that jurisdiction has not been lost, although if the original demand for judgment had been for $1,527.50, the case could not remain on the docket of this court. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845.

The amended complaint alleges that the plaintiff is a Colorado, and the defendant Courter Amusement Co., Inc., a New Jersey, corporation, and that the defendants own and operate a theatre known as the Ormont Theatre, at East Orange, New Jersey.

That on or about September 21, 1936, the corporate parties executed an agreement (a copy of which is annexed to the complaint) which, by its terms, was "read and signed at New York City".

That the plaintiff executed the agreement at Denver, Colorado, on September 24, 1936, and that the parties immediately entered into the performance thereof.

That, pursuant thereto, the defendants agreed to pay the plaintiff $15 for each day that "Bank Night" was used during the term of the contract at the said theatre, commencing October 14, 1936, and that the plaintiff furnished to the defendants the articles and accessories required by the contract; and that the defendants did stage "Bank Night" during certain weeks in the year 1936 which are stated, and paid $15 for each operation.

That commencing January 6, 1937, the defendants staged the performance contemplated by the contract twice a week down to the commencement of the action, and until April 12, 1937, they called the performance "Bank Night"; thereafter they called it "Cash Award Night".

That the defendants have wilfully breached the agreement, in that they have paid only $165 on account of the indebtedness which accrued from January 6, 1937, to the commencement of the action, and the sum referred to is demanded as damages.

The answer asserts that the agreement sued upon was entered into "for the purpose of operating a lottery" in the said theatre, and that it was so operated from October 14, 1936, to October 13, 1937.

That the material, numbers, drawing cards, and instructions were furnished to the defendants by the plaintiff under the agreement "for the purpose of operating said lottery, with full knowledge and intention that the defendant Courter Amusement Co., Inc., through its officers, servants and employees, would invite the general public to enter into said lottery and that the general public, as aforesaid, would pay a consideration for an opportunity to win a prize, the winner of said prize to be determined by the use on the part of the defendant Courter Amusement Co., Inc., of the material and equipment furnished by the plaintiff herein pursuant to said agreement".

Then follow allegations to the effect that the winner of said prize was required to furnish a consideration for the opportunity or chance to win it and was required to be a person who had previously registered for that purpose, and that the enterprise constituted a lottery in violation of a cited section of the Constitution of the State of New Jersey, as amended, and in violation of its public laws which are referred to by chapter and number, and which laws are set forth in the said answer.

For a second separate defense, it is pleaded that the agreement is illegal and void because its purpose was to accomplish the operation of the said lottery.

Annexed to the notice of motion, is an affidavit by one Edward Goldstein, verified January 18, 1940, whose connection with the case seems to be that during the years 1936 and 1937 he was the sales representative of the plaintiff in the States of New York and New Jersey, and he asserts that he is familiar with what the parties did under this contract, and that the "Cash

Award Night", as put on by the defendants, was exactly the same as "Bank Night", and that this was in substance admitted by the defendant Rettig in an examination before trial held on November 25, 1938.

The last-named person executed an affidavit verified February 5, 1940, in opposition to this motion, the material portion of which is that, when the contract sued upon was entered into, it was the mutual belief of the contracting parties that the distribution of a prize at regular intervals in the said theatre would result in a substantial increase "in the purchase of paid admissions to the said theatre, and that as a result of said increase in paid admissions, the corporate defendant would profit thereby. The device of announcing outside the theatre the name of the holder of the winning number drawn by lot or chance was merely a device to give the scheme the appearance of legality. The corporate defendant operated a theatre for the purpose of making profit, and not for the purpose of giving away cash."

The affidavit continues, that the plaintiff's system known as "Bank Night", according to deponent's information and belief, is nothing more or less than a lottery, which is prohibited by the laws of the State of New Jersey, and among other things he denies the admission attributed to him in the affidavit of Goldstein above-referred to.

The other affidavits need not be referred to, because enough has been shown to indicate that the controversy between the parties comes down almost entirely to the question of whether the contract sued upon really contemplated the operation of a lottery; and, if it did, whether it is illegal under applicable law.

The plaintiff asserts that the contract may be adjudicated under the law of New York, and the defendant asserts that it is to be decided according to the law of either New Jersey or Colorado.

The law of the place of contemplated performance of a contract governs. See Coghlan v. South Carolina R. Co., 142 U.S. 101, 12 S.Ct. 150, 35 L.Ed. 951; Pin-ney v. Nelson, 183 U.S. 144, 22 S.Ct. 52, 46 L.Ed. 125, and cases cited in each opinion.

It is apparent therefore that the applicable law is that of New Jersey. It will be assumed that this court, sitting in New York, will follow the state rule that the laws of New Jersey are to be established by evidence, as would be the case concerning all other facts.

Obviously the defendants' purpose in pleading the substantive law of New Jersey was to lay the foundation for such proof.

The plaintiff relies upon State v. Horn, 1 A.2d 51, 16 N.J.Misc. 319, to establish "that the operation of 'Bank Night' does not constitute a lottery under the New Jersey Statutes".

That was a criminal prosecution, in the disposition of which the court was guided by the evidence as to how the plan was actually put into effect. The same requirement is present here.

It is true that the contract in terms does not provide for the operation of a lottery in the sense that, in order to win a cash prize, a person is required to purchase a ticket of admission to the theatre. And yet it is entirely clear that the purpose of the contract must have been to increase paid attendance in the theatre.

If the plan was in fact so put into effect that only persons who had paid admissions proved to be prize winners, a jury might find that the scheme was so colorable in operation as to constitute a lottery; equally, it might not. That issue cannot be resolved on mere pleadings and such affidavits as are now presented.

In People v. Shafer, 160 Misc. 174, 289 N.Y.S. 649 (affirmed on appeal, 273 N.Y. 475, 6 N.E.2d 410) the opinion discloses that the setting aside of the conviction was based upon an examination of the evidence taken at the trial.

In the belief that this cause requires a like exposition, the motion for summary judgment will be denied.

Settle order.