Lawrence H. Cooke, J.
In this action for a declaratory judgment and injunction, plaintiff moves for summary judgment.
Previously defendant moved to dismiss the complaint for legal insufficiency and the Appellate Division affirmed Special Term’s denial of said motion (14 A D 2d 658). A partial factual summary is recited in the said appellate memorandum, viz.: ‘ ‘ Plaintiff, a Massachusetts corporation, is engaged in the business of licensing retail stores, including so-called supermarkets, to operate its * goodwill award plan ’ under agreements specifying conditions for its use and the payment of a fee therefor by its licensees, six of which, it is alleged, are licensed by defendant to sell beer at retail for off-premises consumption pursuant to section 54 of the Alcoholic Beverage Control Law. The State Liquor Authority determined that the plan ‘ constitutes gambling within the intent and meaning of the Alcoholic Beverage Control Law and the Rules ’ of the Authority and that1 participation therein by the licensee would constitute cause for revocation, cancellation or suspension of the license involved ’. It then notified plaintiff’s licensees that it had received information indicating their violation of the law by suffering or permitting gambling on their premises and threatened the immediate institution of revocation proceedings unless the occurrence of the violation was acknowledged and a written agreement ‘ to cease and desist “ from this type of violation in the future ” ’ was executed and returned to the Authority. Fearing that their beer licenses otherwise would be placed in jeopardy, several of the licensees then discontinued the use of the plan and terminated their contracts with plaintiff.” It also appears without dispute (see par. “ eleventh ” of affidavit of Martin C. Epstein submitted in opposition) that the goodwill award plan was con *888 ducted by placing signs outside of the supermarkets in question inviting the public to participate and stating that participation was free and that nothing need be purchased and that all participants should obtain a registration card, that said cards recited that “ participation in Goodwill is free but you must register, then qualify this card each week to be eligible to receive the current week’s award ”, that to be eligible for an award a person must again call at the store premises and have his registration card punched for the current weekly award by a store attendant and that on an appointed night each week in the parking lot outside the premises a drawing was held from a drum and cash awards were made to such person whose number was drawn and who was present in the premises or on the parking lot, loudspeakers being employed to announce the winners to people in the premises or on the lot outside.
Summary judgment is applicable to actions for declaratory judgment and injunction as rule 113 of the Rules of Civil Practice now makes said remedy available to every party in any type of civil action without limitation, except that in matrimonial actions only the party against whom matrimonial relief is sought may move for summary disposition. (See Randolph v. Jacobs, 20 Misc 2d 310; Vaudable v. Montmartre, Inc., 20 Misc 2d 757.) In applications such as this the decisive consideration is the existence of conflicting issues of fact (Werfel v. Zivnostenska Banka, 287 N. Y. 91). The court must search the proof, as proffered by affidavits or otherwise, to ascertain whether it discloses a real issue, a triable issue, rather than a formal, feigned, perfunctory or shadowy one and, if there be nothing in truth to be tried, summary judgment should be granted (Rubin v. Irving Trust Co., 305 N. Y. 288, 306; Schillinger v. North Hills Realty Corp., 15 AD 2d 539; Di Sabato v. Soffes, 9 A D 2d 297, 300). If no issue of fact is presented and the record contains a sufficient showing of undisputed facts to permit the issues to be determined as a matter of law, summary judgment should be directed, as issues of law do not prevent summary judgment (Town of Harrison v. County of Westchester, 13 A D 2d 708; Coutts v. Kraft & Bros. Co., 119 Misc. 260, affd. 206 App. Div. 625). It has been held that, where a defendant in his answering affidavit to the motion for summary judgment requests summary judgment dismissing the complaint, as here, he impliedly concedes that there are no issues of fact (Safro v. Feldshuh, 200 N. Y. S. 2d 480). Here, in this case, the parties are in essential agreement as to the facts and there is nothing in truth to be tried. The only real issues to be determined here are those of law.
*889 One who, having knowledge of an existing valid contract between others, intentionally, knowingly, and without reasonable justification or excuse, induces one of the parties to the contract to breach it to the damage of the other party, is liable in an action to recover the damages suffered, the action being predicated on the intentional interference without justification with contractual rights with knowledge thereof, such interference constituting a legal wrong and, if damages result, a valid cause of action exists therefor (Hornstein v. Podwitz, 254 N. Y. 443, 448; Gonzalez v. Kentucky Derby Co., 197 App. Div. 277, affd. sub nom. Gonzales v. Reichenthaler, 233 N. Y. 607; Dior v. Milton, 9 Misc 2d 425, 440, affd. 2 A D 2d 878; Morris v. Blume, 55 N. Y. S. 2d 196, 199, affd. 269 App. Div. 832; Cramer v. Travelers Ins. Co., 180 Misc. 464).
The fundamental question here is one of law as to whether the undisputed conduct of plaintiff and its licensees, the operators of the retail establishments in question, constituted gambling. Defendant asserts that it has power to prescribe causes for revocation, cancellation or suspension of licenses other than violations of the Alcoholic Beverage Control Law (Matter of Lehama Rest. v. O’Connell, 280 App. Div. 796; Alcoholic Beverage Control Law, § 118) and points to subdivision 13 of rule 36 of the Buies of State Liquor Authority which states: “ No person licensed to sell alcoholic beverages shall suffer or permit any gambling on the licensed premises”. (9 NYCBB 53.1 [in].) But is the “ goodwill award plan ” gambling?
The common law defined “ gaming ” as a contract between two or more persons by which they agree to play by certain rules at cards, dice or other contrivance, and that one shall be the loser and the other the winner (People v. Fuerst, 13 Misc. 304, 306; Bouvier’s Law Dictionary [Baldwin’s Cent, ed.], p. 460). But here there is no loser because no valuable consideration is given by participants. Webster’s New International Dictionary (2d ed.) defines “ gamble ” as: “ 1. To play or game for money or other stake, as at cards, dice, horse racing, etc. 2. Hence: To stake money or any other thing of value upon an uncertain event; to hazard; wager. ’ ’ Said dictionary defines ‘1 gambling ’ ’ as: “a Properly, the act of playing or gaming for stakes, b Loosely, the act of risking or staking anything on an uncertain event; wagering. In the strict sense of the term, gambling implies a playing or gaming, as at checkers, dice, cards, horse racing, cockfighting, or some other sport or contest, as well as a staking or risking of money to be lost or won on the issue.” The appropriate definition of a “ stake ” is given in said work *890 as: “ 6. To put at hazard upon the issue of competition, or upon a future contingency; to wager; venture; bet. To stake his life and property on the event of a war. Macauley.” Here, there has been no wagering, risking, betting, hazarding or staking of money or other thing of value by the participants. In Chicago Patent Corp. v. Genco, Inc. (124 F. 2d 725) it was held (pp. 727-728): “To gamble is to risk money or other possession upon an event, chance or contingency in the hope of realization of gain ”.
No statute or other authority has been submitted showing that the activity in question constitutes gambling or is illegal. In People v. Shafer (160 Misc. 174, affd. 273 N. Y. 475) which should be controlling here, people registered in a book in the lobby of a theatre in order to participate in a drawing of money donated by the theatre to the winners on the drawing, participation being free with no requirement for the purchase of an admission ticket, the lower court holding (p. 176): “In my opinion either the payment of a valuable consideration or an agreement to pay for the chance must precede the drawing.” It is reasonable to assume that the Court of Appeals would not have held therein as it did if said 1 ‘ bank night ’ ’ plan was gambling under the State Constitution. In People v. Mail & Express Co. 179 N. Y. S. 640, affd. 192 App. Div. 903, affd. 231 N. Y. 586) defendants were charged with violations of section 1370 of the Penal Law in that they had put into effect a scheme to distribute cards and had announced that they would distribute among the holders of such cards selected by chance certain sums of money, no price being paid or obligation being made to pay any consideration by the receiver thereof, Judge Freschi, then in the Court of Special Sessions, holding (p. 646): “ In order to make out a case under our statute, the court must find in the facts charged an element of risk; in other terms, there must be something of value ventured for some gain. The feature of a gamble must be present in all its aspects. Valuable consideration must be parted with, or there must be an expressed or implied agreement to pay it.” In People v. Hines (284 N. Y. 93, 101) the court defined a lottery as “ a scheme for the distribution of property in which a valuable consideration is paid on chance alone, with no admixture of skill.” In Kohn v. Koehler (96 N. Y. 362, 367-368, it was held: “ Lotteries, which are the subject of condemnation under the Constitution and laws of this State, are schemes where money is paid for the chance of receiving money in return. As a general rule the money thus paid, in case a prize is not drawn, is lost, and no return had for the game. The purchaser may draw a prize, or may draw a blank, *891 and he thus hazards what he has paid upon the chances, incident to a drawing by lot. The evils attending a system of lotteries, and against which the laws of this State are aimed, consist in the risk which people are willing to take in hazarding their money with a chance of losing the same without any or but very little benefit or advantage whatsoever, and with but a remote prospect of gain. This was a species of gambling which inflicted serious injury upon certain classes of the community which prompted the prohibition of lotteries in the Constitution of this State, and the enactment of severe laws against their operation.” In Federal Communications Comm. v. American Broadcasting Co. (347 U. S. 284) it was held that radio and television “giveaway ” programs, in which prizes were given to persons selected by chance who answered questions correctly and who contributed no money or other valuable consideration but who were required to listen, did not violate section 1304 of the United States Criminal Code prohibiting the broadcasting of “ any lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance”, the court stating (pp. 290-291): “ All the parties agree that there are three essential elements of a ‘ lottery, gift enterprise, or similar scheme (1) the distribution of prizes; (2) according to chance; (3) for a consideration. They also agree that prizes on the programs under review are distributed according to chance, but they fall out on the question of whether the home contestant furnishes the necessary consideration.” In said matter an injunction was granted enjoining the Federal Communications Commission from enforcing certain provisions in its rules relating to the broadcasting of said programs and the Supreme Court said (p. 296): “It is true, as contended by the Commission, that these are not criminal cases, but it is a criminal statute that we must interpret. There cannot be one construction for the Federal Communications Commission and another for the Department of Justice. If we should give § 1304 the broad construction urged by the Commission, the same construction would likewise apply in criminal cases. We do not believe this construction can be sustained. Not only does it lack support in the decided cases, judicial and administrative, but also it would do violence to the well-established principle that penal statutes are to be construed strictly.”
Under section 9 of article I of the State Constitution, except for authorized parimutuel betting and bingo, it is provided that: ‘1 no lottery * * * or any other kind of gambling * * * shall hereafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses *892 against any of the provisions of this section.” The fact that no statute has been enacted by the Legislature prohibiting activities such as the goodwill plan in question is indicative of the fact that the Legislature does not consider same as gambling. Just as regulations issued by a State department must be in conformity with State laws (Frost v. Jones, 207 Misc. 1086; 1 N. Y. Jur., Administrative Law, § 104, p. 449), so too there cannot be one construction of gambling for the State Liquor Authority and another for the law of the State. In People v. Erickson (283 N. Y. 210, 211) is was held: “ Pursuant to a public policy embodied in the Constitution of the State and founded firmly, I think, both on old traditions and sound public opinion, the Legislature long ago enacted statutes to punish gambling and to curb professional gamblers or gamesters. The courts may punish or curb only in accordance with those statutes.” Significantly, Justice Elsworth in his unreported opinion herein denying defendant’s motion to dismiss stated: “Nevertheless, the State Liquor Authority, unlike Alice in Wonderland, cannot establish a new and different meaning to a word merely because it says so. In other words whether the acts here characterized by it as gambling are of that nature is subject to certain judicial standards of what constitutes gambling under our law ’ ’. The goodwill plan here under consideration is not considered as gambling under the laws of our State as it presently exists and it cannot be so considered by defendant.
Defendant contends that the instant action is barred by sections 2 and 121 of the Alcoholic Beverage Control Law and that only those ‘ ‘ actions ’ ’ of the Authority as specified in section 121 are subject to judicial review. This contention is answered by the Court of Appeals decision in New York Foreign Trade Zone Operators v. State Liq. Auth. (285 N. Y. 272, 278), wherein it was held: ‘ ‘ This is a case where a declaratory judgment will quiet a disputed jural relation involving only questions of law, and where other forms of action are not reasonably adequate.” It was answered by the aforesaid Appellate Division decision in this matter (14 A D 2d 658) with the following statement: “ A justiciable controversy is thus presented which, within the court’s discretionary power, the declaratory judgment procedure was intended to reach.” Furthermore, declaratory judgments have been approved where the legality or meaning of a statute or of a ruling made by an administrative official is in dispute and no question of fact is involved (Dun & Bradstreet v. City of New York, 276 N. Y. 198, 206; Kirn v. Noyes, 262 App. Div. 581, 583); including the testing of the validity of regula *893 tions, orders and directives of administrative departments, boards and commissions (Ivory v. Edwards, 278 App. Div. 359, affd. 304 N. Y. 949; Buhl v. University of State of N. Y., 182 Misc. 786; 22 C'armody-Wait, New York Practice, p. 736).
In condemnation matters it has been held proper to maintain actions for declaratory judgment and injunction in the Supreme Court where there is a claim of an alleged unauthorized and illegal appropriation of real property by an agent of the State while acting in his official capacity as the State’s condemning authority (Society of N. Y. Hosp. v. Johnson, 5 N Y 2d 102; Saso v. State of New York, 20 Misc 2d 826). However, apart from such cases, as to the broad question of the State’s immunity from an action for a declaratory judgment, the rule to be applied has been summarized in this way: where a proprietary right of the State is involved and the jurisdiction question is raised, the courts have been consistent in sustaining the immunity of the State; but where no proprietary right is involved, the Supreme Court has asserted its right to pass upon the final questions involved (22 Carmody-Wait, New York Practice, p. 742; General Mut. Ins. Co. v. Coyle, 207 Misc. 362, 364; New York Foreign Trade Zone Operators v. State Liq. Auth., 285 N. Y. 272; Town of Ohio v. People, 264 App. Div. 220; Strauss v. University of State of N. Y., 280 App. Div. 1017). The word “ proprietary ” has been defined as: belonging to ownership; as, proprietary rights (Ferguson v. Arthur, 117 U. S. 482, 487; Bouvier’s Law Dictionary [Baldwin’s Cent, ed.], p. 997). No such proprietary right is involved here.
Plaintiff is entitled to a declaratory judgment declaring that the goodwill award plan of plaintiff as set forth in the complaint is not gambling, is not illegal and is not violative of the Buies of the State Liquor Authority and that defendant has no right or power to revoke, cancel or suspend the license of any licensee issued under the Alcoholic Beverage Control Law on the ground that said licensee is operating said plan. Plaintiff is entitled to an injunction enjoining defendant, its agents and all persons acting for it and on its behalf from revoking, canceling or suspending such a license because of the operation of plaintiff’s goodwill award plan, as set forth in the complaint, as long as the provisions of statutory law and the Buies of the State Liquor Authority do not contain prohibitions against same. Plaintiff’s motion for summary judgment is granted to such extent.